23657. Thank you. Hold on a second, Mr. Tito. You can get a fifth podium if you just hold on. Good morning. Good morning. If I may please the court, Brian Tipton here from the law firm of Florio Perucci, Steinhardt, So this case is essentially about a malfunctioning air conditioning unit that was voluntarily installed on a New Jersey Transit locomotive that the plaintiff was operating on the day of his accident. It's been our position all along that this should be a standard FILA case, which has the balance of evaluating negligence on the part of New Jersey Transit and negligence on the part of the plaintiff. Do you dispute that a temperature control system is essential to the safe operation? Absolutely. You do? Yes. And the reason, as you know, Judge Lineman ruled that a temperature control system, quote unquote, is essential and integral. That phrase was not argued by plaintiff's counsel at summary judgment. It really didn't come out of any case law. He created that by doing some of his own research. I appreciate that. My question is not about- Yes. Yesterday, it's about right now. Does the New Jersey Transit operation dispute that a temperature control system is essential to the safe operation of its trains? Is that his position? Yes. In the way that it's being used in this case, we all, of course, we do what we can. And the federal regulations, as you know, require- But then why isn't it in the pertinence? If it is essential, why isn't it in the pertinence for the benefits of the LIA? Well, our position is it's not essential to have air conditioning functioning at all times. We try to make sure that they work. We have inspections. We do what we can to maintain them. But the federal regulations don't require it. They require a- But if it's in a pertinence, it's supposed to function. Well, the- And if it doesn't function, as it didn't at this time, why isn't that a violation? And the only case you have against, you have on your side, is this 1936 case, which dealt with an experimental divide, which you've just conceded this is not. I'm not conceding. I don't want to mean to concede that we believe a functioning AC unit is essential. We believe the windows are another way to control temperatures. And if they were opened in this case, we wouldn't be here today. So you don't need- And let's face it, there are railroad locomotives have operated for well over 100 years with no AC. And many of them still operate that way because the federal regulations only require air conditioning units in trains that are put in service after 2012, June of 2012. Those were regulations that came after. But as you know from Molen and any number of other cases, it doesn't matter whether there was a regulation at the time. The fact that the regulation comes later is a sufficient condition, but it isn't a necessary condition, is it? Well, that takes us back to, yes, if you're not violating a federal regulation, you fall back to the Lunsford analysis, which is the essential and integral. Is the part where pertinence essential and integral? And our position is an AC unit is not because there are other ways for temperature to be controlled, i.e. opening the windows. So there's the federal regulation that talks about locomotive cap temperature. The regulation says that you have to have a minimum of 60 degrees. So it regulates cold temperatures, but they decided not to put in a maximum temperature. And that was something they affirmatively decided to do. They could have put in a max. They put in a minimum. And therefore, it's our position it's not essential to cool down the cab because there are alternate ways. It's a comfort, absolutely. And obviously we want our engineers to be comfortable. But it's not a mandate. It's not a requirement. And therefore, it's not essential. And if you follow the cases of Brent and Moscow, in both of those cases, although not directly on point, they both come to the determination that an adequate ventilation system is opening windows. And in both of those cases, there was no air conditioning in those locomotives. But they did find there was adequate ventilation by having windows, which again would support the position. But once you have decided that you will do it by air conditioning, and so that becomes an appurtenance, then isn't it under the LIA your responsibility to see that it works? That is, maybe you could have something that doesn't have it. Maybe, I'm not saying. But once you've decided this is the way to cool, then it has to work. There may be, say in a locomotive, two types of brakes. And either one may be acceptable. But once you've chosen a very fancy brake to put in, then isn't it your responsibility to have that brake work? And if it doesn't, aren't you liable? I would say to that analogy that brakes are clearly safety devices and clearly would be parts or appurtenances. And what's different here, and I think you're alluding to the Straub and the Herald analysis, which is where when you choose to put something in voluntarily, there can be an obligation to properly maintain it. In Herald, it was a beacon, a safety device. Clearly a safety device and clearly, therefore, essential and integral. In Straub, it was a seat adjustment mechanism. And the seats, locomotive seats have been found in many cases to be subject to LIA, proper functioning. So those two cases can be distinguished. And I feel that in this situation, Judge Lyman stretched those failure to maintain cases into a situation to incorporate this failure to maintain a voluntary air conditioning unit. And the difference is the air conditioning unit is not a safety device. And it has not been recognized in any court as being subject to the LIA. And I believe the reason being is because of the reasoning in Moscow and Brent. Have there been any court that has held the opposite? There have been no courts that have determined that an air conditioning unit is or is not an essential or integral part. And just help me understand this. So I think that there was a final rule with the Federal Railroad Administration. And it talks about – and I understand that there's no – in the regulations, there's only a minimum. But it talks about temperature extremes. And in discussing temperature extremes, it talks about both minimum and maximum. That is too cold or extremely hot as a concern, as a safety concern. Would you agree or disagree with that? The rule – that rule you're referring to that's cited by the opinion is there. I agree with that. But if you read further down, it also talks about the railroad industry's position on putting in a maximum temperature. So I think what that document does is it talks about what was discussed, what was considered. But what they actually – FRA actually acted on was the regulation. And in that regulation, they didn't include it. And they did so with all that information that you just referenced, Your Honor. FRA expects reliance upon engineering controls to limit temperature extremes. So you agree. But what you're saying is they ultimately just implemented a minimum. Correct. And they had every opportunity, as Your Honor indicated, by having that before them. And they chose not to do it. My concern is – What is the purpose then of the LIA? What is the fundamental purpose? To only apply to essential and integral parts and appurtenances. And I would say – I thought that the fundamental purpose was a little deeper than that. It has to do with employee safety. That's also true, yes. So if you have – if you agree with that, that is a statute, the fundamental purpose of which relates to ensuring safety of employees, say in the railroad or locomotive context, then this commentary from the FRA in the rule about extreme temperatures affecting – too cold, too hot – affecting the safety of employees, why isn't that relevant? Why can't we consider that? Of course you can, Your Honor. I'm saying that because they didn't put it in the regulation. I mean, the industry needs to know what the rules are. And the problem with this temperature control system ruling by Judge Lyman is it created an undefined thing, a system, that isn't in the regulations. I mean, the railroad industry needs to know what the rules are. This ruling here makes it uncertain for the future. Why does it make it uncertain? Because – If it says – if you put it in, it has to work. That looks pretty certain to me. Now, you said the other cases dealt with safety. But now in your discussion with Judge Clogier, you really concede that this has to do with safety. And if it has to do with safety, why is it different from my break example? Well, I would say in this situation, there's no definition of what's a maximum temperature. Is it 80? I mean, even in the rule, it referenced 80, 90, 100. What's the rule for the industry to go on? How do we know, as a railroad company, what is the maximum temperature that's acceptable? They chose not to make one because, again, I believe it's because they know the windows will open. And that's how locomotives have operated over a great deal of time. Well, I like heat, but I know what my maximum temperature is. Okay. So you've reserved some time for rebuttal. Yes, Your Honor. We'll hear from Mr. Fitzgerald. May it please the Court. Your Honor, before we get to the substance of the matter on which you were just quizzing counsel, appellees have the firm view that there's waiver here, and you don't even get to that issue. The omissions on the part of the appellant in the court below undermine its ability to now bring to this court the substance of Judge Lyman's decision with respect to parts and appurtenances and integral and essential. This is a straightforward application of the waiver principles. It's a matter of fairness to the parties, guidance to Judge Lyman below, and guidance to this court. It's not disputed that the appellant failed to bring a Rule 50 motion, failed to object to the jury instruction about which they now complain, and it is a perfectly appropriate read of Judge Lyman's summary judgment decision below to view that as a decision which was a product of a mixed question of law and fact when he concluded that sufficient evidence had been adduced at the summary judgment stage to lead him to the conclusion that the air conditioning unit... So you're saying this was not a purely legal question? That's exactly right, Your Honor. It may have been a decision by Judge Lyman that the air conditioning unit constituted a part and appurtenances for the purposes of the LIA. So maybe it sounds like a legal issue? It sounds to me like a decision made by Judge Lyman, but it does not sound like a purely legal issue. Then you're getting us into this whole mess of a Supreme Court's decision in Dupree and so on, and it's all very well, but frankly, why don't we just deal with America? Absolutely. Absolutely, Your Honor. I think he's giving us a way out, but okay. Without waiving my arguments on waiver in my brief, let me move into the substance. Essentially, New Jersey Transit makes two arguments as to why Judge Lyman allegedly got it wrong when he concluded at the summary judgment stage that the air conditioning unit was a part and appurtenance. The first argument that they advanced was that unless it violates a regulation of the FRA, then it's not a violation of the LIA. Well, we know that's wrong as a matter of statutory construction, and this Court in the case of Whalen v. Penn Central already rejected that argument. In other words, and in that regard, the Second Circuit has, by the way, been in line with all the other circuits who have addressed that question. A locomotive or its parts and appurtenances might satisfy federal regulations and still be unsafe. So the first argument that they advanced is easily dispatched with. The second argument they make is that Judge Lyman's decision was an error in and of itself because the AC unit was not a part or appurtenance. Now, I would suggest based upon the inquiries that came from Your Honors that it is clearly an essential part of the locomotive. As a matter of logic, Judge Lyman concluded that if, for example, the chair in Straub is an essential and integral part of a locomotive because it keeps the engineer in his seat and able to safely operate the locomotive, it is also the case that the environment in the cab. By the way, a cab is a hot mess. So I understand your argument based on the Penn Central case and so on, but it is a little odd that after this rule that Mr. Tipton and I were discussing that the regulation refers only to a minimum. Why is that? Well, the regulation does also, as Your Honor pointed out, refer to a maximum of 80 to 90 degrees. While it does not rise to the level of a regulation, there's no doubt guidance in there which informed Judge Lyman when he concluded that a temperature control system in a locomotive cab is an essential and integral part. But that's not reflected in the ultimate regulation. Is that right? That's correct. And why is that? It's guidance. I cannot answer that question, Your Honor. I suspect the answer is because the Federal Railroad Administration is continually lobbied by the railroad industry as to what does and does not go into their regulations. So the railroad industry undoubtedly put up an objection to having maximums. Well, but that doesn't matter. They may put it in because of a railroad industry or not, but when it's not there, it's not there. So the question is, does it matter? It does not. Thank you, Your Honor. It does not matter because we go back to the question, the point that I just made from the Whalen v. Penn Central case, that clearly a predicate for violating the Locomotive Inspection Act is not a violation of a Federal Railroad Administration regulation. The requirement of the LIA, which, by the way, is a safety statute, as Your Honor pointed out, intended to be interpreted liberally in order to advance the purpose of the statute, which is to have safety both for my client, Mr. Lupia, as well as the hundreds of passengers that he's pulling down the rails of New Jersey Transit. So you need to liberally interpret the LIA, which does not require that there first be a violation of Federal regulation, and second of all, that we then get to the meat of why Judge Lyman decided as he did, because it makes logical sense that when an engineer has to be able to operate a locomotive free from extreme heat so he can do his job. He further concluded that if New Jersey Transit chose to create a temperature control system based on an air conditioning unit, then it was required by the LIA to make certain that that equipment was in proper condition and safe to operate without unnecessary danger of personal injury. So this idea of a temperature control system is a little bit more, is a little bit bigger than some of the very discreet, very concrete appurtenances in the case law. Would you agree with that? I would say that Judge Calabrese's analogy to a braking system is correct. But let me put it another way. If the air conditioning did not work totally well so that it didn't bring it down to a particular temperature, that might be an issue. But what you're saying is that when it doesn't work at all, that's a different matter. So to go back to my braking thing, you have two brakes and you put in a safer brake. If all the safer brake is inadequate, so it operates about as well as the non-safety brake, that may not be a violation. But if it doesn't work at all, once you put it in, then it's a different thing. And you're saying here it doesn't work at all. Yes, it did not work at all in this case, thus the 114 degrees at the start of the trip. But if I could just continue. That doesn't answer the question of whether it's a part or a purpose. Can I address that by continuing with that brake analogy? Because what the LIA does not say is that you can only operate a locomotive if your systems are operational and safe. It uses the term on purpose, parts and appurtenances. So let's say a braking system fails such that a train causes an accident. There's a collision because the braking system fails. And let's say the railroad were to come before this court and say, well, our brake pads worked properly. The hydraulic line was intact and working correctly. But we say, yeah, but the discs on the brakes were broken and therefore it didn't work. It seems to me that's the situation we're dealing with when we are talking about the phrase parts and appurtenances. The system may have some parts that work. For example, in Stroud, some parts of that engineer's chair worked. But the Tenth Circuit correctly found that the chair caused an injury because the mechanism that moves the chair back and forth caused the injury. The central part of a part or appurtenance is a part or appurtenance. Yes, it's a part or appurtenance. The statute, which again must be liberally construed to advance the causes of safety, does not require the entire system to be operational as long as we can prove, as we did at trial, that the malfunction of one part of that system caused the injuries to our client. So, Mr. Tipton, your friend on the other side, says this is a strict liability. Yes. That's what I didn't realize about the LIA. I never really heard of the LIA that got my attention. He says, just as almost a policy matter, that we need to know. And the way that we know, the way that the industry knows, the railroad companies and so on know, is a regulation. It tells us, these are the things you've got to do. And I understand the argument that the LIA can be violated notwithstanding a specific regulation, but can you just address that? Because that seems to be an important component of this. Sure, I see my time's up, but I'd like to answer your question. It's because the standards that govern the operation of a safe railroad through the LIA are separate and apart from any regulation and puts the railroad on notice that if it chooses to install a part or a pertinence on its locomotive, it knows that it must keep that part safe to operate. So, I don't think that we should look to the LIA as the basis through which railroads are put on notice about various subsets or parts and appurtenances of their locomotives. That's not its purpose. The LIA does not exist to give railroads such as New Jersey Transit notice as to what they do, must do, and must not do as far as maintaining their locomotives. But once they do it, they've got to maintain, so long as it's a part or a pertinence, they've got to maintain. Exactly, and that's what Judge Lyman concluded, totally consistent with the circuit court precedent that exists, most particularly from the Herald case in the Eighth Circuit. Thank you. Thank you for your time. And, obviously, we ask that you affirm. Thank you. Mr. Stifton. Yes, so as Your Honor indicated, this definition of temperature control system is vague. It's not defined, and that's the real heart of the problem. I didn't hear counsel address that in the sense that now we've got, we know there are fleets of locomotive engines out there that were not built or remanufactured since 2012. It could be hundreds, maybe thousands. They don't have AC, or they may not have AC. Having a requirement that a temperature control system, that doesn't define maximums. A regulation that only defines minimums. We have a situation now where, under this case law. I'm sorry. So you're saying that there are how many, what percentage of trains, at least that you're aware of, that don't have AC? I can only say that there must be many because they don't have. They are mandated to have air conditioning, and therefore if those railroads don't voluntarily install the air conditioning, they're out there lawfully operating. But what this ruling says is that a temperature control system undefined as to maximums is essential and integral. So it leaves a lot of uncertainty in the industry as to what this ruling means with respect to the existing regs. Why do you say it needs to be essential? If it's in the pertinence, it has to be maintained. Where do you get the word essential? I take that from the Lunsford case, which was then applied to all the other cases. I'm sorry? You take that from, I didn't hear you. The Lunsford Supreme Court case came up with that terminology, essential and integral, as. But that was with respect to whether something was experimental. It didn't have anything to do with whether something was in the pertinence. Many of the cases that came after it used the same terminology, and that's where. You haven't cited them to me, but okay. But that's my concern, I guess, or one of the concerns is this lack of definition for the industry as to the future. And I think making an AC unit or calling it essential and integral is not accurate. And if the FRA thought it was essential and integral, they would have required to be installed in every locomotive, not just ones that were built in a certain year or after a certain year. So how do you square what your argument is right now with what Mr. Fitzgerald pointed out is in the Penn Central case, the Wheeling case, where the absence of a federal regulation on a particular issue is neither here nor there with respect to determining whether there's a violation of the LIA? He's correct that you don't have to have a direct violation of a federal regulation, and that's where the Lundisford analysis. It seems to be the thrust of your argument. It's a big part of it, and why I say that is because it's not as though the FRA didn't rule in this area. I mean, they specifically, they had it. It used to be 50 degrees. They moved it up to 60. And they had this discussion you saw in the rule citations. But they chose not to do it. So it's one thing to not have a federal regulation at all. It's another thing to have one that actually addresses temperature. What I don't understand is that in that language in the rule that you and I have been going on about and that Mr. Fitzgerald also referenced, it talks about two extremes, too hot or too cold, as affecting safety. And if you agree with me that the primary purpose of the LIA is to protect safety, then those two concepts seem to merge for me unless I'm missing something. So the FRA says we're not going to make a regulation, but we're telling you that there are two temperature extremes that may affect safety. And then we agree that the LIA is fundamentally focused on protecting employee safety on railroads and locomotives, right? Yes. So help me. Putting those together, I would say I can't say why they didn't do what they didn't do with respect to a max temperature. They did it with minimum. Why they didn't do it with maximum, I don't know. But what I believe is the case is they know locomotive engines have windows. And that's the way they've always been cooled down over the years. So they decided that it was acceptable to let the windows being open as the mechanism to control temperature when it's hot. You can't do that when it's cold, but you can when it's hot. I appreciate that. So just one more question, sort of like the vacuum. My world is very limited. So how many trains are we talking about with New Jersey Transit that don't have any air conditioning? I believe they were installed in all trains, although I can't say that definitively. I know this one was built in. I was asking for your best guesstimate. My best guesstimate is they may all have them because they agreed to install them. And it was part of their negotiations with the labor unions. Part of the agreement was that it's understood that they have to be examined every 92 days. That's the periodic inspections. And that would be the time when malfunctioning units would be fixed, if they weren't fixed when they were found on time. So it's a huge fleet. AC units are an issue from time to time, and they try to keep them all maintained. But the point is, they shouldn't be obligated to have them functioning at all times, because that's what leads to strict liability. And in this situation, where there are alternative means to control. You could say that about anything. What I was worried about was, if 50% of all railroads within the Second Circuit don't have air conditioning, I would want to know that. But you're saying, really, we're at a stage now where all railroads have got an air conditioning unit. That's a maintenance issue. I'm thinking out west in more northern areas. Maybe they don't. I don't know. By the way, how cool in a locomotive in a hot summer day does opening the windows do? I mean, you say that's an alternative. But did you bring any evidence that this really makes a difference? I mean, here it went up to huge, huge heat. Surely, he should have opened the window. And that was the finding of comparative negligence under the FDLA, because that would have helped. But would it have gotten it down anywhere? Do you have any evidence of that? All I can say is, in the cases of Moscow and Brent, the courts found that non-AC unit locomotives with open windows- Yeah. I mean- In this case- If I'm driving through Minnesota, it's one thing. If I'm driving through Georgia, I'm just curious if you brought in any evidence. My response on that would be that's why this should have been a standard FDLA case, where the jury evaluates the decisions of transit to send them out and the plaintiff making decisions on whether to open the windows. Well, but that goes in part to the safety and to the thing of the locomotive driver. And to the extent that this LIA law is also there, making strict liability so that the passengers will be safe. And you said earlier about the brakes and things, because if the locomotive driver does something which is comparatively negligent, as he did in this case, it may still be very dangerous, which is why we may have the requirement. They're dangerous to the passengers. I mean, this guy fainted, and that's all that happened. But he could have gone off the tracks. He could have hit another train. And again, I think if he opened the windows, we wouldn't be here today, as I said earlier. Well, thank you very much. Thank you very much. Very, very informative for me. A well-reserved decision.